UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ZEVI BUSH | CIVIL ACTION |
| VERSUS | NO. 16-305 |
| STATE OF LOUISIANA ET AL. | SECTION "N" (2) |

### REPORT AND RECOMMENDATION

Plaintiff, Zevi Bush, is a prisoner currently incarcerated in the Orleans Parish Prison system ("OPP") in New Orleans, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the State of Louisiana, Orleans Parish Sheriff Marlin N. Gusman, OPP Chief of Corrections Carmen I. Desaiders [sic],[1] OPP Chief of Security Earl Weaver and three unidentified "John Doe" sheriff's deputies. Bush alleges that, while incarcerated in OPP in August 2015, he was wrongfully transferred from a protective custody area to the old "tents" facility in OPP, where he was attacked and injured by other inmates. He seeks monetary damages. Record Doc. No. 6 (Complaint at ¶ V).

On May 17, 2016, I conducted a telephone conference in this matter. Participating were plaintiff pro se; Michael Keller and Charlin Fisher, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

---

[1]The correct spelling is DeSadier.

## **THE RECORD**

Bush testified at the <u>Spears</u> hearing that he has been incarcerated in OPP since July 2013, when he was arrested on a charge of aggravated rape for which he is awaiting trial that is scheduled for August 29, 2016.

Plaintiff stated that, on August 15, 2015, he was relocated from the Templeman 5 unit of OPP to the "tents," specifically Tent 7 of OPP, after having been "reclassed." Bush alleged that his reclassification was improper. He stated that he was originally classified for "protective custody" in Templeman 5, where he was housed at the time he was reclassified and moved to the tents. He said his protective custody meant "we stay in the cells and we [aren't] in the open, like where they reclassed [sic] me." Bush said he had been classified for protective custody "because of the charge I was on, and it's just a lot safer." He said he had asked to be put on protective custody when he was brought into OPP through "booking" because the old jail was "so corrupt and [had] so much going on there that I thought it would just be safer to request protective custody." Bush acknowledged that he "didn't have to go into any details" in terms of giving reasons for his request, but simply asked "the lady" in booking if there was any way he could be put in protective custody. He said he did not make his request for protective custody because he was afraid of any particular thing or person, but simply because "I tried to avoid going into that area, I just heard a lot about it." He said he simply asked for protective custody and was placed in Templeman 5.

Bush alleged that he was reclassified on August 14, 2015, when one of the deputies on the dorm, whose name he could not recall, advised him that he was being moved to the tents, after he had been housed in Templeman 5 for about two years. He stated that he was given no reason for the move. Bush said he thought he was going to another protective custody area, so he did not tell the transporting deputy he should not go. He alleged that the deputy said Templeman 5 was no longer protective custody. Bush stated that his move from Templeman 5 to the tents was improper because the tents were supposed to be only for inmates whose bonds had been set at less than $100,000, and his own bond was $1 million. Bush said he told the deputies he wanted to stay in Templeman 5 because he was comfortable there, but they told him to pack his things because he had to move. He said he tried to explain that he was on protective custody and wanted to stay where he was, but he was ordered to move. Bush testified that he had not previously been threatened by any inmate who was housed in the tents and that "I didn't know none of the guys that attacked me."

Plaintiff testified that on August 15th, the day after he was transferred to the tents, he got up from a nap after breakfast at about 8:00 or 9:00 a.m. He said that one of the other inmates "wanted my stuff out my bag, and I told him I wasn't giving up stuff out my bag," so the other inmate woke up some of his friends "and they attacked me." Bush stated that the deputy who was supposed to be on duty was not in the tent at the time. Bush said that the attack "happened so fast." He testified that he did not know any of the

attackers before he arrived in the tent and still does not know their names. He confirmed that the inmates attacked him because he would not allow them to steal his property.

Bush testified that the other inmates used some kind of weapon to cut both his forearms and that his finger was fractured in the attack. He stated that he thought he was knocked unconscious and that his attackers were "going through my stuff" when he woke up. He estimated that the attack lasted 10 or 15 minutes. He testified that, when he got up, he knocked on the wall until the deputy came back into the tent about five minutes after the attack. He said that the deputy saw that Bush had been injured and told him to pack up his stuff. Plaintiff testified that he was then taken to the hospital.

Bush stated that he had received and reviewed his medical records that I ordered the Sheriff to produce to him and the court, Record Doc. Nos. 10, 23, and that the records are accurate. He confirmed the references in the medical records that his injuries included injuries to his pinkie finger and bruised ribs. He said he also incurred bruises to his head, a hearing impairment and cuts on his legs and forearms.

Plaintiff reiterated that his first complaint in this lawsuit involves improper reclassification from protective custody to the tents. He stated that after the attack he was moved to another tent where he stayed for two days, and then was moved back to Templeman 5, where he stayed until the new OPP jail building opened and he was moved there. He testified that the new jail has no protective custody area, but he stated that "I'm in a safe zone. It's a lot better here than where they had me." He did not know the name

4

of the deputy whom he alleges should have been on duty in Tent 7 at the time of the attack. Bush also confirmed that his second claim is that defendants failed to protect him from the attack by other inmates.

As to his naming of the State of Louisiana as a defendant, plaintiff acknowledged that he had been in custody as a pretrial detainee in OPP, <u>not</u> in a state facility and <u>not</u> in state custody, for the entire term of his incarceration. He acknowledged that naming the State as a defendant was a "mistake."

On cross-examination, Bush testified that he named Sheriff Gusman, Chief DeSadier and Chief Weaver as defendants because of their supervisory responsibility for all operations in OPP, including humane treatment and safety of the prisoners. Bush acknowledged that he never had personal contact with any of the three supervisory defendants in connection with this incident.

## ANALYSIS

I.  STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); <u>Thompson v. Hicks</u>, 213 F. App'x 939, 942 (11th Cir. 2007); <u>Lewis v. Estes</u>, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004); <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998); <u>Lewis v. Sec'y, DOC</u>, No. 2:10-CV-547-FTM-29, 2013 WL

5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589 F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005.  The information elicited at

such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995);

Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of his constitutional rights under the broadest reading.[2]

---

[2]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620

## II.   CLASSIFICATION/PROTECTIVE CUSTODY

To whatever extent, if any, that Bush alleges a constitutional violation resulting from his transfer out of protective custody to housing in the tents at OPP, he fails to state a cognizable Section 1983 claim. Plaintiff has no constitutional right to a particular status or classification within any prison.

In <u>Jones v. Diamond</u>, 636 F.2d 1364, 1374 (5th Cir. 1981),[3] the Fifth Circuit stated that "pretrial detainees have a due process right to be considered individually to the extent security and space requirements permit." Significantly, however, the classification of inmates is an administrative function of the prison. <u>Id.</u> at 1376. Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. <u>Bell v. Wolfish</u>, 441 U.S. 520, 547-48 (1979); <u>Smith v. Bingham</u>, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." <u>Ricker v. Leapley</u>, 25 F.3d 1406, 1409 (8th Cir. 1994); <u>accord</u> <u>Woods v. Edwards</u>, 51 F.3d 577, 582 (5th Cir. 1995) (citing <u>Hewitt v. Helms</u>, 459 U.S. 460, 469-70 (1983)); <u>Canterino v. Wilson</u>, 869 F.2d 948, 953 (6th Cir. 1989) (citing

---

(5th Cir. 1994), and I have done so in this case.

[3]<u>Overruled on other grounds by</u> <u>Int'l Woodworkers v. Champion Int'l Corp.</u>, 790 F.2d 1174 (5th Cir. 1986), <u>aff'd sub. nom.</u> <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437 (1987).

Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, 196 F. App'x 287, 288 (5th Cir. 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

Assuming the truth of Bush's individualized allegations, as described in his written submissions and testimony, it cannot be concluded that defendants' transfer from "protective custody" to Tent 7 was unconstitutional. There is no indication in Bush's testimony or anywhere else in the record that he was ever officially designated as a "protective custody" inmate, as opposed to being casually placed in Templeman 5 rather than the "tents." He testified that he requested protective custody when he entered the jail, not because he was afraid of any particular thing or person, but because the old jail was "corrupt" and he thought it would be safer to request protective custody. Plaintiff stated that, in the more than two years that he was housed in Templeman 5, he had not previously been threatened or assaulted by any inmate who was housed in the tents. He

testified that another inmate in Tent 7 tried to steal his property the day after he was transferred there. He said that when he prevented the other inmate from taking his property, the other inmate recruited some of his friends to attack Bush. Plaintiff stated that the attack "happened so fast" and that he did not know any of the inmates who attacked him.

The circumstances described in Bush's testimony do not establish the objective unreasonableness of any OPP official's particular housing or classification decision. In this instance, the failure to house plaintiff in protective custody cannot be characterized as arbitrary or indiscriminate or as an abuse of the discretion the law assigns to prison officials, with which this court should not interfere. No violation of plaintiff's due process or other constitutional rights occurred under these circumstances.

III.   FAILURE TO PROTECT

Bush's allegations concerning his attack by other inmates conceivably implicate defendants' constitutional obligation to protect prisoners from harm. Plaintiff was a pretrial detainee on the date of the incident on which he bases this claim. In Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), however, the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement." Id. at 650. Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the

same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Bush in this case. Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650. Here, nothing more than episodic acts or omissions of jail officials have been alleged. For the following reasons, plaintiff fails to state a claim of violation of his constitutional rights cognizable under Section 1983 in the particular circumstances of this claim.

Prison officials have a duty to protect inmates from harm or violence by other inmates and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Williams v. Hampton, 797 F.3d 276, 280 (5th Cir. 2015). The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 834; Williams, 797 F.3d at 281; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S.

at 847. An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, plaintiff must establish that defendants possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Williams, 797 F.3d at 281; Newton, 133 F.3d at 308. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)) (additional citations and footnote

omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291; accord Williams, 797 F.3d at 281.

In this case, Bush fails completely to allege facts sufficient to establish that any defendant possessed a culpable state of mind sufficient to establish deliberate indifference. Plaintiff's testimony and written submissions confirm that he never advised any jail official that he felt threatened or had been attacked in the past by any inmate, including any of the inmates who assaulted him. He confirmed that neither he nor OPP officials had any warning or other indication that the other inmates would attack him in Tent 7 on the day after he arrived. While he alleged that the security deputy who was supposed to be in the tent when the incident occurred had left the area, there is no indication that the deputy's absence was intentional or reckless, as opposed to a mere negligent oversight.

In these circumstances, it cannot be concluded that any defendant deliberately exposed Bush to a substantial risk of serious harm in the constitutional sense. See LeBlanc v. La. State Penitentiary, No. 14-0571-BAJ-RLB, 2015 WL 5011984, at *3 (M.D. La. July 28, 2015), report & recommendation adopted, 2015 WL 5025242 (M.D. La. Aug. 24, 2015) (no deliberate indifference to prisoner's safety when plaintiff did not assert that he and fellow inmate who attacked him had had any prior conflict, that fellow inmate had previously threatened to cause plaintiff harm, that plaintiff had complained

14

to defendant prior to the attack that he was in fear for his safety from fellow inmate, or that defendant had any reason to anticipate that fellow inmate would attack plaintiff without warning); Roy v. Orleans Parish Sheriff's Ofc., No. 15-701, 2015 WL 7750498, at *2 (E.D. La. Oct. 5, 2015), report & recommendation adopted, 2015 WL 7756102 (E.D. La. Dec. 1, 2015) (When plaintiff discovered and objected to another inmate going through plaintiff's belongings, the other inmate attacked plaintiff. Plaintiff testified that the defendant deputy was not aware that plaintiff was in any danger from the other inmate. Defendant "cannot be said to have been deliberately indifferent in failing to protect against a potential harm of which he was unaware."); Taylor v. Louisiana, No. 12-44, 2012 WL 6606961, at *3 (E.D. La. July 10, 2012), report & recommendation adopted, 2012 WL 6600553 (E.D. La. Dec. 18, 2012) (Defendant cannot "have been deliberately indifferent in failing to protect against a potential harm of which she was unaware" when plaintiff "testified that no threats were made prior to the attack and that he had no previous problems, arguments, or altercations with the inmates who attacked him. Not even plaintiff himself, much less [defendant], had advance warning of the attack.").

Because Bush has failed to allege the requisite elements of deliberate indifference and cannot state a cognizable Section 1983 claim for failure to protect him from a known risk of harm, his failure to protect claim should be dismissed.

IV.     SUPERVISOR DEFENDANTS

Bush makes no claim that Sheriff Gusman or the other supervisory personnel he has named as defendants were personally involved in any of the alleged acts or omissions upon which plaintiff's claims are based. "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrs. Corp. of Am., Inc., 364 F. App'x 927, 929 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006). Thus, these defendants cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in their employ or under their supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold any of these defendants liable, plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391; Kohler, 470 F.3d at 1115. "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citation omitted). In the instant action, plaintiff has failed to establish either that any of these defendants was

16

personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of any of these defendants and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

To hold a supervisory official liable for the acts of a subordinate, Bush must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998); accord Brauner v. Coody, 793 F.3d 493, 501 (5th Cir. 2015); Goodman v. Harris Cnty., 571 F.3d 388, 395 (5th Cir. 2009). To state a failure to protect claim under Section 1983, as discussed above, Bush must show that he is incarcerated under conditions posing a

personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of any of these defendants and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

To hold a supervisory official liable for the acts of a subordinate, Bush must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998); accord Brauner v. Coody, 793 F.3d 493, 501 (5th Cir. 2015); Goodman v. Harris Cnty., 571 F.3d 388, 395 (5th Cir. 2009). To state a failure to protect claim under Section 1983, as discussed above, Bush must show that he is incarcerated under conditions posing a

substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection, meaning that the official "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Payne v. Pickett, 246 F. App'x 884, 889-90 (5th Cir. 2007) (citing Farmer, 511 U.S. at 837).

Neither Bush's testimony nor his written submissions in this case are adequate to state a cognizable Monell constitutional claim against Sheriff Gusman, Chief DeSadier or Chief Weaver under these standards.

## V.  STATE AS IMPROPER DEFENDANT

As Bush acknowledged during his testimony, OPP is not a state facility, and the State of Louisiana has no supervisory authority or operational responsibility over pretrial detainees in OPP, which is strictly a municipal facility. Under these circumstances, Bush has asserted no bases upon which the State or any of its individual officers could conceivably be liable.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this __17th__ day of August, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4] <u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.